## BOARD OF COMMISSIONERS OF THE COUNTY OF JACKSON *v.* BRANAMAN.

[No. 21,132. Filed October 10, 1907.]

1. PLEADING.—*Complaint.*—*Gravel Roads.*— *Enforcement of Contracts for Building of.*—A complaint on a gravel road construction contract showing that the road was duly ordered; that plaintiff had fully performed the contract; that the board had refused payment; that it had duly obtained the money wherewith to pay; that plaintiff's claim, duly verified by the superintendent, had been duly filed with the board; that payment had been refused, but which complaint failed to show an acceptance of the road by such board, is not sufficient. p. 82.

2. MANDAMUS.—*Gravel Roads.*—*Acceptance.* — *Payment.* — Mandamus does not lie to compel a board of commissioners to accept a completed gravel road and to pay for the construction thereof. p. 85.

3. HIGHWAYS.—*Gravel Roads.*—*Liability for Construction.*—The contract price of a completed gravel road constitutes an indebtedness against only the persons owning property liable to assessment within the taxing district concerned in the construction of such road. p. 86.

4. SAME.—*Gravel Roads.*—*Acceptance.*—*Conditions Precedent.*— The acceptance of a gravel road by the board of commissioners is a condition precedent to the contractor's right to recover the whole of the contract price thereof. p. 87.

5. SAME.—*Gravel Roads.*—*Acceptance.*—It is the duty of the proper board of commissioners to examine and determine whether a gravel road is constructed according to contract. p. 87.

6. STATUTES. — *Construction.*—*Principal Powers.*—*Implications.* — The statutory grant of a principal power carries by necessary implication a grant of the incidental powers necessary to carry out such principal power. p. 87.

7. SAME.—*Construction.*—*Prior and Subsequent Kindred Legislation.*—*Highways.*—In construing the gravel road statutes, the

courts, to determine the legislative intent, may examine prior and subsequent kindred highway statutes. pp. 89, 91.

8. HIGHWAYS.—*Gravel Roads.—Completion.—Acceptance.—Procedure.*—Under §6911 Burns 1901, Acts 1901, p. 449, §13, upon the completion of a gravel road, it is the duty of the superintendent and engineer to report same to the board of commissioners, whereupon time and opportunity shall be given by the board to the persons assessed for filing objections, which shall be tried, and upon a decision as to the completion of the road an appeal may be taken by any party aggrieved. pp. 90, 91.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by Abraham C. Branaman against the Board of Commissioners of the County of Jackson. From a judgment for plaintiff, defendant appeals. *Reversed.*

*D. A. Kochenour,* for appellant.

*Brooks & Brooks, A. N. Munden, Branaman & Branaman* and *A. C. Branaman, in pro per,* for appellee.

JORDAN, J.—This action was instituted by appellee in the Jackson Circuit Court, against appellant, to recover upon a contract entered into by and between him and said board, whereby he contracted to construct five gravel roads in Owen township, in said county. A demurrer to the complaint for insufficiency of facts was overruled, and the venue was changed to the Lawrence Circuit Court, wherein, upon the issues joined between the parties, there was a trial by the court and a finding in favor of the appellee, and, over appellant's motion for a new trial, judgment was rendered against it for $3,937.35, to be paid out of the funds arising from the sale of the bonds issued under the statute. It was further adjudged that appellee recover of appellant his costs laid out and expended. The assignment of errors calls in question the decision of the court in overruling the demurrer to the complaint, as well as other rulings in the case.

The facts alleged in the complaint may be said to be substantially as follows: Upon a petition of fifty freeholders

of Owen township, Jackson county, the board of commissioners ordered, and there was held, an election by the voters of the township to determine whether the highways in question should be improved by graveling and grading as prayed for in the petition. A majority voted in favor of the improvement, and the board of commissioners thereupon duly ordered that said highways be improved. Plans, profiles, and specifications were adopted, and the contract, upon competitive bidding, was duly and legally let to appellee. Thereupon he entered into a written contract with the board of commissioners to construct the roads, in accordance with the plans and specifications as adopted, at and for the sum of $15,690. Said proceedings were had under and in pursuance of an act of the legislature approved March 3, 1893 (Acts 1893, p. 196, §§6924-6934 Burns 1894), and the amendatory act thereto, approved March 7, 1895 (Acts 1895, p. 143). By the terms of the contract payments were to be made to appellee as the work progressed, on estimates made and certified by the superintendent. Twenty per cent of such estimate was to be withheld until final completion of the work. Appellee duly filed his bond as such contractor, which was approved. Appellant caused bonds to be issued and sold for an amount sufficient to pay the amounts due to appellee and received the money therefor, and now has, and at all times has had, money arising from the sale of such bonds amply sufficient to pay for such roads in full. Thereafter appellant levied a tax upon the property of said township for the payment of said bonds and the interest thereon. Appellee fully performed all the work required by his said contract in accordance with the estimates, plans, and profiles therefor, which were modified by said board of commissioners so as to require him to perform extra work, etc. Appellant duly received, accepted, and approved the construction of the following roads embraced in said contract. (Here the complaint specifies three of the five roads embraced in the con-

tract.)    Appellee completed the other two roads according
to the plans and profiles as modified by appellant and by
the superintendent in charge of such construction, and in
accordance with his contract, and fully performed every
condition and provision of his contract.    Appellant from
time to time made payments to appellee as the work pro-
gressed, upon estimates duly made and filed, and the
amounts paid and the amounts remaining unpaid are fully
specified and set out.    Upon one of the roads appellee did
additional work, under the order and direction of appellant,
amounting to $501, and upon another he did additional
work, in obedience to the order of appellant, under the
plans and profiles aforesaid as modified, to the value of
$503.54.    Upon the completion of said work, and long be-
fore the commencement of this action, appellee filed his veri-
fied claim for said sums, and each of them, with the auditor
of said county, more than ten days before the regular term
of the board, which claim was accompanied by the certificate
and report of the superintendent of each of said roads, duly
verified by him, showing that said roads, and each of them,
had been theretofore completed according to the plans,
plats, profiles, and contract, but appellant, after a long and
unreasonable delay, refused to pay him any part of said
sum, although the same was long past due and wholly un-
paid.    The contract and itemized statement of the extra
work are filed with and made exhibits of the complaint, and
judgment is demanded for $7,500, payable out of the fund
derived from the sale of the bonds, and for all other and
proper relief.

The proceedings to improve the highways in question ap-
pear to have been instituted, as alleged in the complaint,
under and pursuant to the provisions of the act of 1893,
*supra,* as amended by the act of 1895, *supra.*    The latter
act amended sections one, two, five, six, seven, eight and
ten of the original act.    Section one, as amended (§6924
Burns 1897), authorizes the board of commissioners of any

county in this State, upon being petitioned by fifty freeholders of any township or townships, for the improvement of any highway or highways of such township or townships, by grading, graveling, paving with stone or macadamized material, to submit the proposition to the voters of such township or townships, as the case may be, at an election as therein provided, etc. This section, among other things, further provides that if a majority of the voters at the election held shall cast their votes in favor of building such road or roads, then and in that event the board of commissioners shall at once proceed with the construction of such road or roads. The board is empowered to appoint a surveyor, or engineer, and two freeholders of the county as viewers to view and locate the proposed improved highway, and to assess damages, etc. Section five of the original act, as amended (§6928 Burns 1897), empowers the board of commissioners to issue the bonds of the county in order to raise money to pay for the construction of the improvement. The county treasurer is authorized to sell such bonds and to keep the proceeds arising from such sale as a separate and specific fund in the county treasury, to pay for the construction of the road for which the bonds were issued, the money to be paid by the treasurer to the contractor upon warrants issued by the county auditor as directed by the board of commissioners. It is further provided that the board shall order the money to be paid in such amounts and at such times as it may agree, but no more than eighty per cent of the engineer's estimate of the work done by the contractor shall be paid, and the entire amount of the contract price shall not be paid until the improvement has been received as completed by the board of commissioners. Sections three and four of the original act (§§6926, 6927 Burns 1894), make it the duty of the board, in the event the election is in favor of the improvement, to advertise for bids for the construction of the road, and receive such bids either at a regular or called session of the board, and to let the

construction of the improvement by contract to the lowest responsible bidder. The successful bidder is required to give bond for the faithful performance of the work. The contract shall specify all of the particulars of the construction as set forth in the report of the viewers, and shall specify the time when such work shall be completed. By section six, as amended (§6929 Burns 1897), the board of commissioners, in order to provide money to pay the bonds and their interest accruing thereon, is required to levy annually a special tax upon the property of the township, including all towns and cities therein under 30,000 inhabitants. Section ten, as amended (§6933 Burns 1897), invests the board of commissioners with the authority to permit amendments to be made to the petition or the report of the viewers, and to continue the hearing from time to time. The board is also authorized to appoint a competent superintendent, who is to be governed by such rules and regulations as the board may prescribe, and he is required to render to the board, at its regular sessions, an account of the time which he has actually served in the discharge of his duties.

It is manifest, from the facts in this case, and the law applicable thereto, that the complaint in controversy does not, in any sense, state a cause of action against appellant. Appellee, by his counsel, however, insists that by his complaint he is not seeking to recover a judgment against the board in its corporate entity, but is merely endeavoring to compel it, as the agent of Owen township, to order the money in the custody of the county treasurer, arising from the sale of the bonds, to be paid to him. He certainly is mistaken in respect to the method to be employed to secure the payment to him in full of the contract price upon the completion of the work. It is not tenable to argue that he, under the facts, can invoke the remedy of mandamus to coerce
2.  the board of commissioners to receive the road in question as completed, and to require it to direct the

auditor to draw a warrant for payment in full upon the separate and specific fund in the hands of the county treasurer. It is evident, from an examination of the statute upon which the proceedings to construct the roads are based, that he has a complete and adequate remedy to obtain payment in full of the contract price for the services which he has performed under and in accordance with his contract. In the enactment of the law in regard to the construction of free gravel roads the legislature has deemed it proper to designate the board of commissioners of the county as the tribunal before which the proceedings to construct such highways shall be instituted and carried to a final completion. The commissioners, therefore, merely act as a board for that purpose. The statute does not contemplate that the board shall be the agent of the particular township which constitutes the taxing district. It is merely the designated agency or instrumentality of the law to carry into effect its provisions, and for this purpose it has been invested by the statute with certain limited functions and powers, some of which are in their nature and character administrative, while others may be said to be judicial. In carrying the law into effect the board cannot exceed the powers with which it has been invested. It is settled that the indebtedness which is created by the construction of these free improved public highways, is

3. not, in any sense, a liability against the county, nor against the township or townships which may constitute the taxing district, but is the indebtedness of the persons whose property, under the law, is liable to be assessed to defray the expenses of such improvements. *Board, etc.,* v. *Harrell* (1897), 147 Ind. 500; *Kline* v. *Board, etc.* (1899), 152 Ind. 321, 325; *Board, etc.,* v. *Hill* (1888), 115 Ind. 316; *King* v. *Board, etc.* (1904), 34 Ind. App. 231, and cases cited.

It will be noted that, under the provisions of section five, as amended (§6928 Burns 1897), the completion of the im-

provement by a contractor, according to the terms of his contract, and the plans and specifications which form a part thereof, is made a condition precedent to · his right to receive and be paid the whole amount of the contract price. One of the controverted questions in this case appears to be in regard to the completion by appellee of the work which he undertook to perform according to the contract. Until the roads are completed according to the contract he is not in a position legally to demand that the roads be received by the board of commissioners, and that he be paid the full amount of the contract price. While it is true that there is no express provision contained in the statute in question that the board of commissioners shall determine when the work has been completed, nevertheless, it is manifest that the statute, impliedly at least, contemplates that the board shall be invested with this power. It must be remembered that, by an express provision of the law, the board is invested with the general authority to carry into effect the improvements of public highways, subject to the requirements and conditions therein provided. In addition to this general provision, §6928, *supra,* specifically declares, "nor shall the whole amount of the contract be paid until the road shall have been received as completed by the board of commissioners."

In determining the method to be employed by a contractor under the law in question to obtain payment in full when he has completed his work according to his contract, we are aided to a great extent by the rule asserted and enforced in the cases of *Conn* v. *Board, etc.* (1898), 151 Ind. 517, and *Studebaker* v. *Studebaker* (1899), 152 Ind. 89. These cases involved the construction of certain statutes relative to the drainage of lands, and the question therein presented is analogous to the one involved in the case at bar. In the case of *Conn* v. *Board, etc., supra,* we said: "It is a well-affirmed principle that where

a power is conferred by a statute, everything necessary to carry out the purpose of the power conferred and make it effectual and complete will be implied. [Citing authorities.] The implication or inference which may arise in the construction of statutes is of something not expressly declared, but arises out of that which is directly or expressly declared in the statute. * * * If the intention of the makers of the statute in question, in regard to the remedy or method to be employed to enable a contractor to secure payment from the county treasurer upon the completion of his job, can be ascertained, it will control, for it is a fundamental rule that a matter or thing within the intention of the makers of the law is the same in effect as if it were within its express letter. In our search to discover this intention, we may be guided by a well-settled canon of construction, which permits us to look to kindred statutes upon the same subject for aid in the exposition of such intention. It is not, generally speaking, as a rule, expected that a statute which has a place in a general system of laws, will be so perfect as to need no support from the rules and provisions of the system of which it forms a part, and hence, when it is a part of a general system of laws upon the same subject, its construction or interpretation may receive support from the rules and provisions of that system."

In *Studebaker* v. *Studebaker, supra,* the question arose as to whether the board of commissioners was invested with the power to determine if the public ditch there in controversy had been completed according to the contract. In considering this question we said: "While there is no express provision in the statute requiring the board to determine when the ditch has been completed as ordered and designated in the contract of the contractors, still the law fairly implies and intends that the board shall perform this duty. It is an elementary rule that the grant of a principal power carries with it all necessary, subsidiary or implied powers; hence, the board of commissioners, under the

express authority conferred upon it by the statute, to order the construction of such public improvement, is invested with such incidental or implied powers as are necessary fully to carry out the completion of the work. The discharge of such duties is as incumbent upon the board as are those expressly imposed. In practice, it may be asserted that the law contemplates that the matter of the petition for the proposed ditch, or other improvement, shall remain upon the docket of the board of commissioners until the final completion of the work. The law, undoubtedly, further contemplates that when the work is completed according to contract, the engineer, who acts as a superintendent, is to make a final report to the board for its approval, and one of the essential matters, to be determined by the board in approving such report, is whether the work has been completed according to contract. Any landowner, whose land is affected by the improvement would certainly be entitled to appear before the board and controvert the question of the completion of the ditch.''

Guided by the rule affirmed in placing an interpretation upon the statute involved in *Conn v. Board, etc., supra,* we looked to and considered the provisions of section twenty-one of the drainage law enacted in 1881 (§5675 Burns 1894, §4305 R. S. 1881), which act formed a part of the general system of laws providing for the establishment of public ditches by boards of commissioners. Therefore, under the same rule or authority, in our endeavor to explore the intention of the law under consideration in this case, we are at liberty to resort to, and proceed in the light of, kindred statutes relative to the improvement of public highways by boards of commissioners, enacted either prior or subsequently to the statute in question in this case. By an act approved and in force March 11, 1901 (Acts 1901, p. 449, §6899 *et seq.* Burns 1901), the legislature appears to have covered the entire subject as the same is embraced in the statute of 1893, *supra,* and the act

amendatory thereof. By the act of 1901 the statute of 1893, together with all of its amendatory and supplemental acts, is expressly repealed, as are also the other acts therein mentioned. The act of 1901, *supra,* provides that it shall only apply to proceedings begun after it became operative and that the repeal of the acts as therein mentioned shall in nowise affect proceedings begun thereunder prior to their repeal.

By section thirteen of the act of 1901 (Acts 1901, p. 449, §6911 Burns 1901), the legislature expressly designated the procedure to be pursued when the road improved thereunder has been completed. It is provided that if the superintendent and engineer believe that the road has been completed, either as a whole, or any part thereof less than the whole, as required and according to the plans, plats, profiles, and contract under which the improvement is let, then these officials shall each file a sworn statement therein that the road, as a whole, or parts thereof, as the case may be, has been completed according to the plans, plats, profiles, and contract, and that the quality and quantity of material in making such improvement were used as required under the contract. The law contemplates that the auditor shall place this statement before the board of commissioners at its next regular term, but it is provided that the board shall not act upon this statement until it has been filed with the auditor at least ten days before the first day of such regular term. During this period of ten days, under the provisions of said section thirteen, any taxpayer interested in such improvement is given the right, as therein provided, to controvert, by his sworn statement, the completion of the road in question. In the event such statement is filed, the board of commissioners is required to fix a day for a hearing of the issue raised in the case in respect to the completion of the improvement. It is provided that witnesses may be subpœnaed and evidence heard by the board upon such issue in like manner as issues in other

cases are heard by the board. If, upon a hearing, the board finds that the road, or the parts thereof, in issue, as the case may be, have been completed according to the plans, plats, profiles, and contract, then it is required to accept and receive the work of improvement, but if it finds to the contrary, it becomes its duty to refuse to accept the work and to require the contractor to proceed to complete the improvement according to the plans, etc. This section further awards the right of appeal in the matter to the circuit court from the decision of the board of commissioners.

It is a well-recognized rule that in the construction of a statute the court may resort not only to contemporaneous and prior acts of the legislature, but also to a subsequent act of that body in *pari materia* for the purpose of ascertaining the meaning of a former statute. *Prather* v. *Jeffersonville, etc., R. Co.* (1875), 52 Ind. 16; *United States* v. *Freeman* (1845), 3 How. 556, 11 L. Ed. 724; *Cannon's Adm.* v. *Vaughan* (1854), 12 Tex. 399; *In re Yick Wo* (1884), 68 Cal. 294, 9 Pac. 139, 58 Am. Rep. 12; *Lawrence* v. *People, ex rel.* (1900), 188 Ill. 407, 58 N. E. 991; 26 Am. and Eng. Ency. Law (2d ed.), 624; Endlich, Interp. of Stat., §§43, 44, 47.

Considering the provisions of section thirteen of the act of 1901, *supra,* and it certainly can be said that it aids us in determining the procedure which the legislature intended should be pursued under the statute here involved when a contractor has fully completed the work which he had contracted to perform. As originally shown, section five of the original act, as amended (§6928 Burns 1897), provides that "no payment shall be made by the commissioners for more than eighty per cent of the engineer's estimate of work done by the contractor, nor shall the whole amount of the contract be paid until the road shall have been received as completed by the board of commissioners." Construing this provision along with the others of the act of which it forms a part and in the light

of the provisions of section thirteen of the subsequent act of 1901, *supra,* and we are warranted in holding that the legislature intended that; when the work of construction was completed, a procedure somewhat similar to that provided in the act of 1901, *supra,* should, as far as practicable, be followed before the board of commissioners; or, in other words, the statute in question contemplates that the proceedings to construct the road shall remain upon the docket of the board of commissioners until the work is finally completed and that the superintendent appointed by the board to supervise the construction of the road shall then report to the board of commissioners, stating in such report the fact that the work of improvement has been fully completed by the contractor in accordance with his contract. Thereupon the board shall fix a day for hearing and determining the matter in regard to the completion of the work, at which time any interested taxpayer shall be accorded the right to appear before the board and controvert the question of the completion of the road. In the event a taxpayer becomes a party for such purpose, then the contractor should be made an adverse party and be afforded an opportunity to sustain the issue raised by the superintendent's report in regard to the completion of the improvement. If, upon the completion of the improvement, the superintendent should fail to report that fact to the board for its determination, then the contractor may interpose and file an application before the board, showing therein that he had fully completed the work according to his contract, and demand that the road be accepted by the board as completed, and that it order a warrant upon the county treasurer to be issued in his favor, upon the proper fund, in payment in full of the contract price. Of course in the event he avails himself of this right, any interested taxpayer, in like manner as hereinbefore stated, should be accorded the right to appear as an adverse party to him and controvert the question in regard to the completion of the work. In respect to the right of a

person who may be aggrieved by the decision of the board upon the issue or question relative to the completion of the work to appeal therefrom to the circuit court, see *Board, etc.,* v. *Wolff* (1906), 166 Ind. 325; §7859 Burns 1901, §5772 R. S. 1881. If upon such hearing the board shall find that the road has been completed according to the contract, then it should receive and accept the work and order a warrant to be drawn upon the treasurer in favor of the contractor for payment in full of the contract price out of the money arising from the sale of the bonds.

We believe that this interpretation of the statute in question is in accord with its spirit and meaning, and will accomplish what was intended by the legislature, and will afford a contractor an adequate remedy for securing the payment of the contract price. In this holding we are fully sustained by the decisions in *Conn* v. *Board, etc., supra,* and *Studebaker* v. *Studebaker, supra.* The views which we herein express lead to a reversal of the judgment of the lower court, upon the ground that the complaint does not state a cause of action; hence the court erred in overruling the demurrer thereto. For this error the judgment is reversed and the cause remanded to the lower court, with instructions to sustain the demurrer to the complaint.

Montgomery, J., did not participate in the decision of this cause.